# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **MARK S. PRESCOTT,** )<br><br>**Plaintiff,** )<br><br>v. )<br><br>**UNITED STATES OF AMERICA,** )<br><br>**Defendant.** ) | **1:14-cv-00551-JDL** |

## ORDER ON THE GOVERNMENT'S MOTION TO DISMISS

## I. INTRODUCTION

Mark S. Prescott, a veteran of the United States Navy, claims that he was negligently treated by Dr. Thomas Franchini (hereinafter "Franchini"), a former Veterans Affairs podiatrist at the Togus Veterans Affairs Medical Center (the "VAMC"). He also alleges that the VAMC and Franchini fraudulently concealed Franchini's negligence, preventing him from asserting his rights in a timely fashion. In his Second Amended Complaint (ECF No. 84), Prescott asserts claims against the federal government (alternatively, the VAMC or the "Government") for vicarious liability for Franchini's alleged negligence (Count I); direct liability for negligence (Count II); lack of informed consent (Count III); and fraudulent concealment (Count IV). The Government has moved to dismiss the Second Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 89).

This is the second motion to dismiss that the Government has filed in this case. In an Order issued in February 2016, I resolved almost all of the issues raised in the Government's first Motion to Dismiss in favor of the Government, ruling that Maine's three-year limitations period for bringing claims against health care providers, 24 M.R.S.A. § 2902 (2017), is a statute of repose and not a statute of limitations, and that § 2902 is not preempted by the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2401(b) (2017). *See* ECF No. 32 at 40. The Government argues that because § 2902 is a statute of repose, the three-year repose period for the medical negligence alleged by Prescott began to run no later than January 4, 2007—the date of Prescott's second and last surgery performed by Franchini—rather than from February 2013, when Prescott discovered the facts underlying his claims. Thus, the claims alleged by Prescott are time-barred absent some basis in law or equity for tolling the statute of repose.

Prescott asserts that the statutory tolling provision in 14 M.R.S.A. § 859 (2017) related to fraudulent concealment applies to his claims:

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action[.]

14 M.R.S.A. § 859. If § 859 governs Prescott's claims, its six-year limitations period started to run "when the existence of the cause of action or fraud [was] discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence." *Westman v. Armitage,* 215 A.2d 919, 922 (Me. 1966). Extending the limitations period from three years from the date of the alleged tortious act in

accordance with § 2902's statute of repose, to six years from the time Prescott discovered the alleged tortious act, brings Prescott's claims within § 859's six-year statute of limitation. Accordingly, I deferred a final ruling on the applicability of § 859 in connection with the first Motion to Dismiss to afford Prescott, and the plaintiffs in five related actions,[1] the opportunity to conduct limited discovery on the issue of fraudulent concealment and to seek to amend their complaints on the basis of that discovery.

For the reasons explained below, I conclude that a genuine dispute of material fact exists with regard to whether the VAMC and Franchini fraudulently concealed instances of medical malpractice from Prescott, and that these facts are inextricably intertwined with the merits of Prescott's claims. Thus, I cannot yet determine whether, as a matter of law, § 859 governs Prescott's claims, and I deny the Motion to Dismiss as to Counts I (Vicarious Liability), Count II (Direct Liability), and Count III (Lack of Informed Consent) for that reason. The Government also moves to dismiss Count IV (Fraudulent Concealment) for lack of subject matter jurisdiction pursuant to restrictions established by the FTCA in 28 U.S.C.A. §§ 2675(a) and 2680(h), and, as explained below, I conclude that Count IV should be dismissed.

---

[1] *See Wood v. United States*, 1:14-cv-00399-JDL; *Mansir v. United States*, 1:14-cv-00503-JDL; *Myrick v. United States*, 1:15-cv-00045-JDL; *Korsiak v. United States*, 1:15-cv-00220-JDL; and *Downs v. United States*, 1:15-cv-00525-JDL.

## II. LEGAL ANALYSIS

The Government seeks to dismiss the Second Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[2] A federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in the suit, i.e., subject matter jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430-31 (2007).

A defendant may challenge the court's subject matter jurisdiction pursuant to Rule 12(b)(1) in two ways: facially or factually. *See Torres-Negrón v. J & N Records, LLC,* 504 F.3d 151, 162 (1st Cir. 2007). In a facial attack, the court accepts as true those allegations in the complaint—"sometimes augmented by an explanatory affidavit or other repository of uncontested facts"—that are relevant to jurisdiction, draws all reasonable inferences from them in the plaintiff's favor, and determines whether they are sufficient to establish the court's subject matter jurisdiction. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001); *see also Torres-Negrón*, 504 F.3d at 162.

A defendant may also mount a factual challenge to subject matter jurisdiction:

---

[2] Citing *United States v. Kwai Fun Wong*, 135 S.Ct. 1625 (2015), Prescott argues that because "the FTCA's time bars are non-jurisdictional and subject to equitable tolling," claims of untimeliness under the FTCA cannot be resolved under Rule 12(b)(1), and are instead an affirmative defense which the defendant has the burden of establishing. 135 S.Ct. at 1638. Prescott is correct that in *Kwai Fun Wong*, the Supreme Court ruled that the time bars contained in § 2401(b) of the FTCA are non-jurisdictional. *See Kwai Fun Wong*, 135 S.Ct. at 1637-38. The Government's Motion to Dismiss, however, does not allege non-compliance with § 2401(b)'s time bars but rather alleges a violation of § 2902, which determines the Government's waiver of sovereign immunity pursuant to §§ 1346(b) and 2674. *See* ECF No. 89 at 1-2; 28 U.S.C.A. §§ 1346(b), 2674; *Abreu v. United States*, 468 F.3d 20, 25 (1st Cir. 2006) ("In a suit under the FTCA, the district court's jurisdiction is limited by 28 U.S.C. § 1346(b). Only claims properly within the scope of the FTCA's waiver of sovereign immunity in 28 U.S.C. § 2674 are cognizable."). The Government's challenge, therefore, *is* jurisdictional, and *Kwai Fun Wong* is inapposite.

4

The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1)—which we shall call a "factual challenge"—permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.

*Valentin*, 254 F.3d at 363 (internal citations and footnote omitted). "In a situation where the parties dispute the predicate facts allegedly giving rise to the court's jurisdiction, the district court will often need to engage in some preliminary fact-finding." *Skwira v. United States*, 344 F.3d 64, 71-72 (1st Cir. 2003).

Where, in a factual challenge, the necessary facts are relevant both to jurisdiction and to the merits of the plaintiff's case, however, "the standard applicable to a motion for summary judgment" applies. *Torres-Negrón*, 504 F.3d at 163 (quoting *Autery v. United States,* 424 F.3d 944, 956 (9th Cir. 2005) (internal quotation marks omitted)). If the material jurisdictional facts are not in dispute and the moving party is entitled to prevail on the jurisdictional question as a matter of law, then the motion to dismiss is granted. *Torres-Negrón*, 504 F.3d at 163; *Me. Human Rights Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 397 (D. Me. 2011). On the other hand, "[s]hould the plaintiff present evidence showing that the relevant facts are genuinely disputed, the case proceeds to trial and the jurisdictional dispute will be reevaluated once the factfinder has resolved the issues of fact." *Sunbury*, 770 F.

Supp. 2d at 397 (citing *Torres-Negrón*, 504 F.3d at 163); *see also Valentin,* 254 F.3d at 363 n.3 ("[F]or cases in which the jurisdictional facts, though genuinely disputed, are inextricably intertwined with the merits of the case . . . the court may defer resolution of the jurisdictional issue until the time of trial."). At trial, "[i]t is the plaintiff's burden to prove the existence of subject matter jurisdiction." *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).

Prescott's Second Amended Complaint alleges facts intended to demonstrate fraudulent concealment in two ways: first, fraudulent concealment allegedly committed by Franchini in misleading Prescott as to the results of his surgeries and the reasons for the continuing problems he experienced with his ankle; and second, fraudulent concealment allegedly committed by the VAMC in concealing and/or failing to disclose Franchini's negligent treatment to Prescott. I address, in order, (1) the Government's challenge to Prescott's allegations of fraudulent concealment; (2) whether a special relationship existed between Prescott and the VAMC that imposed a duty on the VAMC to disclose Franchini's alleged negligence to Prescott; and (3) the Government's contention that because the FTCA does not afford subject matter jurisdiction for any claim arising out of misrepresentation, Count IV of the Second Amended Complaint should be dismissed because it specifically seeks damages for fraudulent concealment, a form of misrepresentation.

1. **Fraudulent Concealment under 14 M.R.S.A. § 859**

To benefit from the six-year statute of limitations provided by § 859, Prescott must establish that the VAMC or Franchini, acting as its employee, actively concealed facts from him and that he relied on the concealment to his detriment. *Brawn v. Oral Surgery Assocs.,* 819 A.2d 1014, 1026 (Me. 2003). "Active concealment of the truth connotes steps taken by a defendant to hide the true state of affairs from the plaintiff." *Kezer v. Mark Stimson Assocs.*, 742 A.2d 898, 905 (Me. 1999) (internal quotation marks omitted). Active concealment does not require an affirmative false statement and "may consist as well in the concealment of what is true as in the assertion of what is false." *Horner v. Flynn*, 334 A.2d 194, 203 (Me. 1975), overruled on other grounds by *Taylor v. Comm'r of Mental Health & Mental Retardation*, 481 A.2d 139 (Me. 1984); *see also Sprague Energy Corp. v. Massey Coal Sales Co.*, No. 05-222-P-S, 2006 WL 696197, at *17 (D. Me. Mar. 15, 2006) ("Fraud need not necessarily take the form of an express false statement; rather, it can be predicated on active concealment of the truth.").

When a plaintiff alleges fraudulent concealment through the active concealment of facts, the court must assess the allegations against the elements of fraud: (1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other person. *Brawn*, 819 A.2d at 1026; *see also Harris Mgmt., Inc. v. Coulombe,* 151 A.3d 7, 16 n.7 (Me. 2016). "In alleging fraud or mistake, a party must

state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Alternatively, Prescott may show that a special relationship existed between himself and the VAMC or Franchini, acting as its employee, which imposed a duty to disclose to Prescott the facts associated with the alleged professional negligence, and that the duty was breached by the VAMC or Franchini. *See Brawn*, 819 A.2d at 1026. Absent a special relationship, silence and inaction are insufficient as a matter of law to establish active concealment because omission by silence is not tantamount to supplying false information. *See Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995) ("[A]bsent a fiduciary or confidential relationship[] there is no duty to disclose information."); *Glynn v. Atl. Seaboard Corp.*, 728 A.2d 117, 120 (Me. 1999).

I analyze Prescott's assertion of fraudulent concealment by considering (A) the relevant allegations of active concealment made by Prescott; (B) the Government's challenge to those allegations; and (C) Prescott's allegations of a special relationship.

## A.     Prescott's Allegations of Active Concealment

### i. Concealment by Dr. Franchini

Prescott's Second Amended Complaint alleges that Franchini concealed material facts in an attempt to hide that he performed improper and unnecessary surgery. Specifically, Prescott alleges that he injured his left leg, ankle, and foot while running in the 1990s and that his condition worsened over time, necessitating surgical procedures in 2001 and 2003. He began receiving medical treatment from

Franchini at the VAMC in November 2005, at which time Franchini diagnosed him with osteophytes in his left ankle. Franchini later performed two surgeries on Prescott.

Prescott claims that during the first surgery in July 2006, Franchini removed hardware that had previously been placed in his ankle in 2001 and 2003, and afterwards wrote a surgical note stating that Prescott had "tolerated all aspects of the surgery well and left the Operating Room in satisfactory condition." Prescott further alleges that he continued to experience pain in his left ankle, and that, in response, Franchini planned to reevaluate Prescott's ankle in the future, later writing in Prescott's medical file that Prescott's "ankle still needs to be addressed and . . . a new procedure should be done in six months in order to reduce [Prescott's] chronic pain."

Franchini performed a second surgery—an "open repair of osteochondral defect of the left talar dome"—in January 2007, after which Prescott alleges that Franchini wrote a note in his medical record stating that "ankle radiographs show a well-healing osteotomy of the medial malleolus," and subsequently that Prescott had a "healed osteotomy." Prescott further alleges that Franchini told him that injection therapy to the left ankle region could be appropriate to address his ongoing pain problems.

Prescott claims that he continued to experience pain in his ankle and foot, and that approximately two years later, in January 2009, Franchini wrote in Prescott's medical record that the pain was the result of degenerative joint disease. Prescott

alleges that Franchini examined him again in December 2009, noting at that time that he had "developed an abnormal gait due to damage of the left ankle and started to cause excessive load to the right ankle which is causing pain and discomfort."

Additionally, the Second Amended Complaint cites an April 2012 memorandum authored by Yuri Walker, the Director of the Risk Management Program at the Veterans Health Administration's Office of Quality, Safety, and Value, on behalf of a "Subject Matter Expert Panel" convened by the VAMC to evaluate Franchini's patient care (the "Walker Memorandum" or "Memorandum"). The Memorandum states that "it appears that [Franchini] was actively falsifying some medical records, stating that the patient was doing well, when the opposite was true." The Memorandum also contains the following question and answer:

> Q: Is it certain that records were being actively falsified, or was it a case of poor clinical judgment?
>
> A: It appears to be a combination of both active falsification and poor clinical judgment. The radiographs did not support the decisions to operate in most cases. In other cases, patients have stated that what the provider told them is different from what was documented in the chart. It has been noted that there was a lack of conservative management in most cases, and an emphasis on surgery.

ECF No. 94-3.

In early 2013, the VAMC invited Prescott to a meeting with VAMC Director Ryan Lilly and VAMC Chief of Staff Dr. Timothy Richardson concerning his medical care, at which time they informed Prescott of a podiatric review stating that Franchini's care was "less than ideal" and may have caused Prescott's symptoms to worsen.

Prescott contends that Franchini's statements in 2009—that his ongoing problems with pain and mobility were due to degenerative joint disease, rather than the surgical procedures that Franchini performed in 2006 and 2007—were knowingly false or made with a reckless disregard for their truth or falsity in an attempt to conceal that Franchini had performed the 2006 and 2007 surgeries improperly and unnecessarily. Prescott also argues that Franchini's alleged concealment is imputed to the VAMC because Franchini was acting within the scope of his employment.

### ii. Concealment by the VAMC

Prescott contends that the VAMC fraudulently concealed Franchini's malpractice, and in so doing was also directly negligent in its care of Prescott. Specifically, the Second Amended Complaint alleges that in late 2009, VAMC officials became aware of general concerns regarding Franchini's patient care. Dr. Richardson directed Dr. Robert Sampson, then Chief of Surgery, to conduct a review of 25 random surgical procedures performed by Franchini. Dr. Sampson completed his review in March 2010 and concluded that there appeared to be "significant documentation and quality of care issues in a number of [the 25] cases."[3] On April 27, 2010, the VAMC Professional Standards Board suspended Franchini who would later resign on November 8, 2010. In September, the VAMC sent an "alert notice" to the state licensure boards in the jurisdictions where Franchini was licensed, notifying them of an issue of clinical competence. In April 2010, the VAMC prepared an "Issue Brief" concerning the VAMC's investigation of Franchini's care, which directed Dr. Sampson

---

[3] It bears emphasis that this and the other alleged facts have not been fully examined and tested by the trial process and finally determined by a factfinder.

to begin "face-to-face" disclosures to patients who had been identified as having received substandard care from Franchini.

The VAMC's disclosure of adverse events related to clinical care is governed by VHA Directive 2008-002 (the "Directive"). The VAMC "Issue Brief" on Franchini noted that, as of April 15, 2010, it was "considered likely that institutional disclosure of unnecessary or inappropriate surgical interventions [by Franchini] will be required." At some point between April 17 and April 24, 2012, Dr. Sampson reviewed Prescott's case and provided a written assessment to the VAMC. ECF No. 89-2 at ¶ 19. Nearly a year later, the VAMC contacted Prescott in February 2013 to inform him that Franchini had possibly provided substandard care. Prescott alleges that the VAMC actively concealed Franchini's negligence from him by deliberately delaying its investigation and disclosure of Franchini's negligence.

## B. The Government's Challenge

The Government has submitted declarations and exhibits which, it contends, establish that neither Franchini nor the VAMC engaged in fraudulent concealment. In response, Prescott has submitted his own declarations, deposition transcripts, and exhibits.

As to Franchini, the Government first argues that Prescott's claim that Franchini fraudulently concealed substandard surgical procedures is factually unsupported because there is no evidence that either surgery deviated from the applicable standard of care. The Government cites a February 2013 podiatric note regarding Franchini's care of Prescott that found no fault with the 2006 surgery and

concluded only that the 2007 surgery was "less than ideal" and "may have caused bone pressure against the medial wall of the talus . . . which could explain why [Prescott's] symptoms became so much worse than before the last surgery."

Second, the Government asserts—incorporating by reference an argument made in a related case (*Wood v. United States*, 1:14-cv-00399-JDL)—that there is no evidence that Prescott's medical treatment was at issue when Walker authored her April 2012 Memorandum, and notes that Walker never spoke to Franchini in preparing that report. The Government further discounts the probative value of the Walker Memorandum by noting that although Walker found that Franchini appeared to have falsified patient records, Prescott does not predicate his fraudulent concealment claim on anything contained in his own medical records. Finally, the Government submits a declaration from Franchini attesting that he never "'lied' to a patient about their condition or the reasons why [he] believed they were experiencing pain," and never "concealed anything about a patient's condition or [his] care from that patient." *Wood*, 1:14-cv-00399-JDL, ECF No. 115-1 at ¶ 3. Franchini also states that "any statements [he] made to all of [his] patients (plaintiffs included) were based on what [he] believed in good faith to be true at the time," *id.*, and that he endeavored "at all times to communicate accurate and truthful information to all my patients." *Id.* at ¶ 4.

As to the VAMC, the Government makes three primary arguments: first, based on the affidavits and declarations from VAMC officials, the facts do not show an intent to conceal but rather, at worst, a negligent but good faith investigation into

Franchini's practices; second, that the facts show only nondisclosure rather than concealment; and third, even if the VAMC *did* conceal facts from Prescott, it could not have done so until, at the earliest, March 2010 when Dr. Sampson finished his review of the 25 randomly chosen surgical cases and concluded that there were concerns regarding Franchini's care.   ECF No. 89 at 3.   Therefore, the Government contends, there is no allegation that the VAMC had any information to conceal during the three-year period beginning January 4, 2007, the date of Prescott's second (and last) surgery by Franchini, which the Government argues is when Prescott's period of repose began to run.

The Government makes both a facial and a factual challenge to Prescott's allegations.   Neither party cites to decisional authority in this Circuit as to whether a defendant can have it both ways by asking the court to consider the sufficiency of a complaint's jurisdictional allegations, while simultaneously disputing most of those allegations and submitting evidence outside the pleadings.   In *Torres-Negrón*, however, the court noted that "if the movant, either in his motion or in any supporting materials, denies or controverts the pleader's allegations of jurisdiction, then he is deemed to be challenging the actual existence of subject matter jurisdiction, and the allegations of the complaint are not controlling."   504 F.3d at 162 n.8 (1st Cir. 2007), quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1363, at 653-54 (1969); *but see Hollingsworth v. United States*, No. CV-05-80-B-W, 2005 WL 3435099, at *4 n.5 (D. Me. Dec. 14, 2005) ("[A]ddressing the sufficiency of the allegations in the Complaint would appear to be a necessary prerequisite before examining their

underlying accuracy."). I adopt the approach suggested by *Torres-Negrón*. Where, as here, a party disputes the jurisdictional allegations of a complaint and offers a substantial body of evidence in support of its position, the court's inquiry should focus on that evidence to determine whether subject matter jurisdiction actually exists. Although I proceed accordingly, I note that even if a facial analysis was also required, the allegations of Prescott's Second Amended Complaint would survive facial scrutiny.

It is apparent from the factual record submitted by the parties that the jurisdictional facts, including fraudulent concealment and when the cause of action accrued, and the facts related to the merits (i.e., negligence) are intertwined. Both concern what Franchini allegedly did and said to Prescott, and what was and was not communicated to Prescott regarding the potential cause of his ongoing pain. As such, I employ the standard applicable to a motion for summary judgment in ruling upon the Government's factual challenge, *see Torres-Negrón*, 504 F.3d at 162-63, by assessing the record in the light most favorable to Prescott as the nonmovant and resolving all reasonable inferences in his favor. *See Small Justice LLC v. Xcentric Ventures LLC,* 873 F.3d 313, 323 (1st Cir. 2017). Applying that standard, I conclude that Prescott's allegations of active concealment, although disputed by the Government, have a factual foundation and raise a genuine issue of disputed material fact concerning whether Franchini and the VAMC concealed instances of alleged negligence from Prescott.

The Government concedes that Prescott had the 2006 and 2007 ankle procedures, and that Franchini told him that his continuing pain after the 2007 procedure was due to Prescott's own anatomy (degenerative joint disease) rather than an iatrogenic cause. Although the Government argues that the February 2013 podiatric note does not evidence a deviation from the standard of care, the note's statement that Franchini's surgery may have caused a condition "which could explain why [Prescott's] symptoms became so much worse than before the last surgery," creates a genuine factual dispute as to whether Franchini was negligent. Furthermore, although Prescott does not base his fraudulent concealment allegations on the contents of his own medical records, the Walker Memorandum nevertheless raises a question of fact as to whether Franchini engaged in a pattern of active falsification in his dealings with his patients, including Prescott. The Government argues that the Walker Memorandum "hardly provides a sufficient factual foundation for [Prescott's] 'active concealment' claim," citing a declaration from Walker stating that she never spoke to Franchini and had no first-hand knowledge regarding his state of mind, or what he was thinking when he documented the condition of his patients. However, although Walker's Declaration minimizes the foundation for the conclusions stated in her earlier Memorandum, it does not neutralize the factual significance of these conclusions. A jury could reasonably infer from the panel's conclusions, stated in the Walker Memorandum, that Franchini regularly falsified information related to his treatment of VAMC patients, and, notwithstanding the denials contained in his declaration, the representations he made to his patients,

including Prescott following the 2007 surgery, were either knowingly false or made with reckless disregard as to their falsity.

Resolving all reasonable inferences in Prescott's favor, I conclude that a jury, presented with the facts asserted by Prescott, considered in conjunction with the Walker Memorandum, could reasonably infer that when Franchini told Prescott that his allegedly unsuccessful procedure was successful and that his continued pain was due to his own anatomy, Franchini had knowledge of its falsity or acted with reckless disregard as to whether it was true or false, that the false representation was material and made to induce Prescott's reliance, and that Prescott reasonably relied on the representation. *See Harris Mgmt., Inc.,* 151 A.3d at 16 n.7.

The parties also dispute whether the facts show the VAMC's intent to conceal. The VAMC became aware of problems with Franchini's medical care in late 2009. The initial review of a sample of his cases completed in March 2010 raised even greater concerns, prompting Franchini's suspension and subsequent resignation, an investigation into all of Franchini's surgical cases, and the expectation of an "Institutional Disclosure" pursuant to the VAMC's Directive. The VAMC's Directive states that "[i]nstitutional disclosure of an adverse event must take place as soon as possible (generally within 24 hours, but no more than 72 hours if adequate information is available) after a practitioner's discovery of the adverse event." ECF No. 56-5 at 10. The undisputed facts further show that no disclosures were made in 2010, and that the broader investigation into Franchini's surgical cases conducted by Dr. Sampson stretched from 2010 into 2012. Dr. Richardson testified at his

deposition that notwithstanding the reports he received from Dr. Sampson between 2010 and 2012, he decided not to make disclosures because he needed more information and because premature disclosures could cause liability for the VAMC. Thus, rather than make disclosures to patients, the VAMC undertook a secondary review of all of Franchini's cases starting in the summer of 2012, which had the effect of further postponing the disclosure.

Dr. Sampson reviewed Prescott's record between April 17 and April 24, 2012, adding Prescott to a list of patients potentially impacted by Franchini's alleged malpractice, ECF No. 89-2 at ¶ 19, and testified that it was his expectation that patients who had suffered adverse events should and would be promptly notified. ECF No. 94-5 at 149, 167. The VAMC did not send a disclosure letter to Prescott, however, until in or around February 2013, almost ten months later. A declaration from Dr. Richardson indicates that acceleration toward eventual disclosure occurred only after Brian Stiller was replaced as the VAMC's Chief Executive Officer. *See* ECF No. 89-1 at ¶ 8. Even at that point, Ryan Lilly, who was the Associate Director and then the Director at the VAMC, testified that the decision was made to delay disclosures until patients were re-examined. ECF No. 94-8 at 15. The VAMC made just one disclosure in 2012, to a patient who had been treated by Franchini and who was suffering from a terminal illness unrelated to Franchini's care.

I conclude that there is a genuine factual dispute as to whether the VAMC engaged not merely in possibly negligent nondisclosure, but rather in a pattern of conduct intended to keep the potential controversy regarding Franchini out of the

public eye. There is evidence that VAMC officials avoided or delayed compliance with the Directive's timeframes. The two VAMC officials most responsible for making the disclosures, Dr. Richardson and former Chief Executive Officer Stiller, were ultimately disciplined by the Veterans Administration for the years-long delay that occurred. Although both attributed that delay to inattention on their part, and explained that they at all times were acting in good faith, the evidence also permits an inference that the disclosures were not made to avoid placing the VAMC in a negative light with respect to its care of potentially hundreds of its patients. The record reflects that as of July 24, 2012, when the VAMC had reviewed all 431 of Franchini's surgical cases, 60% or 257 were found to warrant institutional disclosure. *See* ECF No. 94-4 at 8, 10. Considering all of the facts in the light most favorable to Prescott as the non-moving party, the facts could support a finding that the VAMC's course of conduct constituted not just nondisclosure, but "steps taken by a defendant to hide the true state of affairs from the plaintiff." *Kezer*, 742 A.2d at 905.

Finally, the parties dispute when Prescott's cause of action accrued and when the statute of repose began to run. The Government asserts that because Prescott alleges harm resulting from negligently performed surgeries, the latest his claim could have accrued is January 4, 2007, the day of his last surgery with Franchini. As such, even assuming the VAMC did conceal information from Prescott after it had notice of Franchini's negligent care in March 2010, that concealment was too late to save his claims. *Brawn*, 819 A.2d at 1026 ("After a cause of action expires pursuant to the three-year statute of limitation no amount of subsequent concealment can

revitalize an already stale claim."). Prescott argues, however, that Franchini's continuing misrepresentations to him as to the success of the surgeries and the ongoing cause of his pain, which continued until January 2010, constitute not only fraudulent concealment, but also continuing acts of professional negligence.

On the record before me, a jury could reasonably find that Franchini's postoperative care, which stretched into January 2010, constituted "continuing negligent treatment":

> [P]ursuant to section 2902, a plaintiff may bring a single action alleging continuing negligent treatment that arises from two or more related acts or omissions by a single health care provider or practitioner where each act or omission deviated from the applicable standard of care and, to at least some demonstrable degree, proximately caused the harm complained of, as long as at least one of the alleged negligent acts or omissions occurred within three years of the notice of claim.

*Baker v. Farrand*, 26 A.3d 806, 816 (Me. 2011). The harm Prescott alleges is the injury to his right ankle, foot, and leg (and related pain) due to Franchini's care. Although Prescott alleges the harm commenced with surgery, he further alleges that Franchini's concealment of the harm—and the true cause of Prescott's ongoing problems—prolonged and exacerbated his injury and pain. A jury could reasonably find from these facts that Franchini's concealment deviated from the standard of care and was a proximate cause of Prescott's harm. Thus, it is possible that Prescott's three-year statute of repose did not expire until January 2013.

Resolving all reasonable inferences in Prescott's favor, I conclude that there is a genuine factual dispute as to whether the VAMC intentionally delayed disclosures

to conceal Franchini's alleged negligence from his patients, including Prescott.[4] Because Franchini's treatment of Prescott ended in January 2010, if the VAMC had disclosed its findings soon after the April 2012 review of Prescott's care was completed, he could have initiated a civil action within the three-year repose period established by § 2902 as well as the six-year limitations period established by § 859.

Because the facts related to subject matter jurisdiction and the merits are both inextricably intertwined and largely in dispute, I deny the Government's Motion to Dismiss as to Counts I, II, and III.

## C.   Special Relationship

Prescott contends in the alternative that even absent active concealment, a special relationship existed between him and the VAMC so that the VAMC's failure to inform him of Franchini's malpractice constitutes fraudulent concealment. *See Noveletsky v. Metro. Life Ins. Co.*, No. 2:12-cv-00021-NT, 2013 WL 2945058, at *9 (D. Me. June 14, 2013) ("In Maine, fraud by failure to disclose or by silence may be established . . . by demonstrating a special relationship . . . that imposes an affirmative duty to disclose.") (internal citations omitted).

I determined in my February 2016 Order that Prescott had failed to establish that a special relationship existed between him and the VAMC based upon a hospital-patient relationship. ECF No. 32 at 31-32. Thus, Prescott's argument that a special relationship existed between him and the VAMC is barred by the law of the case doctrine. *Remexcel Managerial Consultants, Inc. v. Arlequín,* 583 F.3d 45, 53 (1st Cir.

---

[4] I cannot and do not resolve that factual dispute at this stage of the proceedings.

2009) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983) ("When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

Even if it was not barred by the law of the case doctrine, Prescott's argument would still fail. Maine law defines a "special relationship" as a relationship "giv[ing] rise to an affirmative duty to aid and protect, such as the relationship between a common carrier and passenger, employer and employee, parent and [minor] child, or innkeeper and guest." *Estate of Cummings v. Davie,* 40 A.3d 971, 974 (Me. 2012) (quotation marks omitted). The nature of Prescott's relationship with the VAMC— that of a Navy veteran receiving outpatient care for a foot and ankle injury—does not reach the level of a power imbalance that characterized the relationships in which the Maine Law Court has recognized a special relationship. *See, e.g.*, *Dragomir v. Spring Harbor Hosp.,* 970 A.2d 310, 315 (Me. 2009) (finding special relationship between hospital and highly vulnerable psychiatric patients); *Fortin v. Roman Catholic Bishop of Portland,* 871 A.2d 1208, 1220-22 (Me. 2005) (finding special relationship between church and student/altar boy who was sexually abused by a priest). While the VAMC occupied an important role in Prescott's life to the extent that it was providing him with medical care, its presence in his life "was not marked by a great disparity of position and influence." *Gniadek v. Camp Sunshine at Sebago Lake, Inc.,* 11 A.2d 308, 314-15 (Me. 2011).

There was no special relationship between Prescott and the VAMC, and, therefore, there is no reason to apply § 859 on that basis.

## 2.    Claim for Fraudulent Concealment

In addition to its argument that Prescott's claims are time-barred pursuant to § 2902, the Government further argues that Count IV, which seeks damages for the tort of fraudulent concealment, as distinguished from fraudulent concealment in connection with the application of § 859, should be dismissed for lack of subject matter jurisdiction pursuant to 28 U.S.C.A. §§ 2675(a) and 2680(h).

Section 2680(h) limits the Federal Tort Claims Act's waiver of sovereign immunity established by § 1346(b)—which authorizes suits against the United States for certain torts—over "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights[.]"  28 U.S.C.A. § 2680(h) (emphasis added).  Thus, because Prescott's count for fraudulent concealment is premised on an alleged misrepresentation, this Court lacks jurisdiction over it.  *See Mullens v. United States*, 785 F. Supp. 216, 219 (D. Me. 1992) ("The misrepresentation exception to the FTCA bars suits based on negligent as well as deliberate misrepresentations . . . whether based on false statements or a failure to provide information[.]") (internal quotations and citations omitted), *aff'd*, 976 F.2d 724 (1st Cir. 1992).  That fraudulent concealment applies to Prescott's case for purposes of the statute of limitations analysis under § 859 bears no connection to, and does not save, Prescott's separate claim for fraudulent concealment as a basis to recover damages.

I therefore grant the Government's Motion to Dismiss as to Count IV. Because I conclude that Count IV should be dismissed pursuant to § 2680(h), I do not analyze it under § 2675(a).

## III. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss the Second Amended Complaint (ECF No. 89) is **GRANTED** as to Count IV, and **DENIED** as to Counts I, II, and III.

**SO ORDERED.**

**Dated this 23rd day of February 2018.**

**/s/ JON D. LEVY**
**U.S. DISTRICT JUDGE**
